Bryce A. Suzuki, Esq. (#022721)
Justin A. Sabin, Esq. (#026359)
**BRYAN CAVE LLP**
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
Telephone: (602) 364-7000
Facsimile: (602) 364-7070
Email: bryce.suzuki@bryancave.com
justin.sabin@bryancave.com

Attorneys for Hackman Capital Equipment
Acquisition Company, LLC and Apache
Railroad Holdings, LLC

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SNOWFLAKE COMMUNITY FOUNDATION,<br><br>Debtor. | In Proceedings Under Chapter 11<br><br>Case No. 15-bk-06264-MCW<br><br>**EMERGENCY MOTION FOR ENTRY OF AN ORDER: (I) DISMISSING THIS CASE; (II) CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY WITH RESPECT TO CERTAIN STOCK ASSETS; OR (III) GRANTING RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO SUCH STOCK ASSETS AND EXCUSING TURNOVER WITH RESPECT TO SUCH STOCK ASSETS**<br><br>Hearing Date: Not yet set<br>Hearing Time: Not yet set |

Hackman Capital Equipment Acquisition Company, LLC, as administrative agent and a lender ("Agent"), and Apache Railroad Holdings, LLC ("Apache Holdings," and collectively with Agent, "Movants"), by and through undersigned counsel, hereby move for entry of an order: (i) dismissing Snowflake Community Foundation's ("Debtor") chapter 11 case pursuant to 11 U.S.C. § 1112(b) for cause; (ii) confirming that the automatic stay is not applicable with respect to certain stock assets obtained by Apache Holdings prior to the petition date; or (iii) in the event the Court concludes that there is a bona fide dispute regarding the ownership of such stock assets (which there is not), granting Movants relief from the automatic stay with respect to such assets

779658.3\0377524

under 11 U.S.C. § 362(d)(1) for cause, and excusing Movants from turnover with respect to such assets under 11 U.S.C. § 543(d). Movants also request a waiver of the 14-day stay of the effectiveness of any order confirming that the automatic stay is inapplicable or granting relief from the automatic stay under Federal Rule of Bankruptcy Procedure 4001(a)(3).

This motion is more fully supported by: (i) the accompanying Memorandum of Points and Authorities; (ii) the exhibits attached hereto; (iii) the Declaration of Michael D. Hackman filed concurrently herewith; (iv) the Declaration of Sandeep Gupta filed concurrently herewith; and (v) the entire record before the Court in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION.

Debtor is a holding company whose sole purpose was to hold the stock of a railroad company that operates a small railroad in eastern Arizona. Debtor has no income or operations. Agent and four other lenders made prepetition loans to Debtor totaling $6.375 million secured by Debtor's interest in the stock of the railroad company, which loans matured a year ago and remain unpaid. Despite giving Debtor nearly a year after maturity to repay the loans, Debtor has failed to do so. Accordingly, Agent exercised its rights under its loan documents to transfer the stock of the railroad company to Apache Holdings and otherwise terminate Debtor's voting and distribution rights with respect to the stock. Debtor no longer owns the stock.

Notwithstanding the valid prepetition transfer of the stock, two days later Debtor filed its bankruptcy petition, improperly scheduled the stock as an asset of the estate, and made demand on Movants and another party for what appears to be turnover of the stock. Debtor has no operations, has no income, does not own the stock, has no assets other $50 in a bank account, and has only two creditors (other than the lenders), both of whom hold unsecured claims. It is clear that Debtor cannot reorganize and filed this case not for any legitimate bankruptcy purpose, but solely to harass Movants, frustrate their ability to exercise ownership and control over the stock, and gain a tactical advantage through the automatic stay that Debtor otherwise could not gain in state court.

Movants should not be forced to suffer the delay and expense caused by Debtor's frivolous actions. Accordingly, Movants request that the Court dismiss this case, enter an order confirming

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE: (602) 364-7000

that the automatic stay does not apply with respect to the stock as it is not estate property, or enter an order granting relief from the automatic stay with respect to the stock and excusing turnover.

## II. JURISDICTION AND VENUE.

1. The Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

3. The statutory bases for this motion are 11 U.S.C. §§ 105, 362, 543, and 1112.

## III. FACTUAL BACKGROUND.

4. On May 20, 2015, Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing this bankruptcy case.

5. Debtor is an Arizona nonprofit corporation formed in January 2013 for the sole purpose of holding the stock of The Apache Railway Company ("Apache Railway").

6. Apache Railway is an operating entity that owns and controls a "short-line" railroad known as the Apache Railway that operates between Holbrook and Snowflake, Arizona.

### The Pre-Petition Loans To Finance Debtor's Acquisition Of The Stock

7. In January 2013, Debtor purchased 100% of the stock of Apache Railway (the "Stock").

8. Debtor's acquisition of the Stock was financed by certain loans totaling $6,375,000 made to Debtor by Hackman Capital Equipment Acquisition Company, LLC, Rabin Worldwide, Inc., Capital Recovery Group, LLC, Revere Finance LLC, and Aztec Land and Cattle Company, Limited (collectively, the "Lenders") on January 30, 2013 (collectively, the "Loans").

9. In connection with the Loans, Debtor executed and delivered to Agent a Pledge Agreement (the "Pledge Agreement") pursuant to which Debtor pledged to Agent, as administrative agent for itself and each of the Lenders, all of Debtor's interest in the Stock as security for repayment of the Loans.[1]

---

[1] Lender Aztec Land and Cattle Company, Limited, which on information and belief is owned and controlled by Steve Brophy (who is an insider of Debtor), is not a signatory to the Pledge Agreement. The Loans are also secured by other collateral, including a deed of trust encumbering real property owned by Apache. This other collateral is not relevant to this motion.

10. Pursuant to the Pledge Agreement, the Lenders appointed and authorized Agent to act as administrative agent for the Lenders with respect to the Loans and the collateral securing the Loans (including the Stock) as more specifically set forth therein.

11. In connection with the Pledge Agreement, Debtor delivered to Agent the original stock certificates issued by Apache Railway to Debtor evidencing the Stock.

12. Agent currently holds, and at all relevant times has held, the original stock certificates issued by Apache Railway to Debtor evidencing the Stock.

13. The promissory notes (as amended) evidencing the Loans required Debtor to make monthly payments of accrued interest and to repay the entire principal balance in a single payment due on June 1, 2014 (as extended from the original maturity date of January 1, 2014). The Lenders further agreed therein to permit interest to accrue in the event Debtor lacked the cash necessary to make its monthly interest payments.

14. Debtor explicitly agreed that if it could not repay or repurchase the Loans by the June 1, 2014 maturity date, it would not "take any actions that might impede or delay Lenders' foreclosure efforts on the assets and will actively assist in any way it can using good faith with reasonable efforts to expedite the foreclosure process." [01/31/14 Letter attached as Exhibit A]

**Failure To Repay The Loans, Negotiations With Debtor, And Transfer Of The Stock**

15. The Loans matured on June 1, 2014.

16. Debtor failed to repay the Loans upon maturity. In fact, Debtor has not made a single payment on the Loans since the Loans were made nearly 2.5 years ago in January 2013.

17. Debtor's failure to repay the Loans upon maturity constituted an event of default under the Loans. Agent, through its counsel, provided Debtor with written notice of the maturity default by letter dated April 15, 2015.

18. Agent, on behalf of the Lenders, has exercised an extraordinary amount of patience and exhibited the highest degree of good faith throughout the life of the Loans. Indeed, notwithstanding Debtor's failure to repay the Loans when they matured nearly a year ago, Agent, on behalf of the Lenders, negotiated in good faith with Debtor regarding a potential resolution for the repayment of the Loans, allowed Debtor substantial time to seek refinancing of the Loans,

considered discounted payoff proposals from Debtor that Debtor ultimately was unable to consummate, and otherwise took no action to exercise any of its rights and remedies with respect to the Loans although it was under no obligation to so refrain.

19. After nearly a year of forbearing from exercising its rights, and with it becoming clear to Agent that Debtor was simply unable to obtain new financing or to sell the Stock (its only asset) to repay the Loans, Agent opted to exercise its rights under the Pledge Agreement with respect to the Stock.

20. On May 18, 2015, due to the events of default under the Loans and pursuant to, among other things, Sections 7(b) and (c) of the Pledge Agreement, Agent exercised its rights to (i) transfer the Stock to Apache Holdings (and Apache Holdings took ownership and control of the Stock), and (ii) terminate Debtor's voting and distribution rights with respect to the Stock with such rights vesting in Agent.

21. Thereafter, also on May 18, 2015, Apache Holdings, as the sole shareholder of Apache Railway, adopted resolutions by written consent that, among other things, (i) approved and adopted amended and restated bylaws of Apache Railway, (ii) removed each of the prior directors and officers of Apache Railway, and (iii) elected and appointed Sandeep Gupta as Director, Chief Restructuring Officer, and President of Apache Railway.

22. Thereafter, also on May 18, 2015, Mr. Gupta, as the sole Director of Apache Railway, adopted resolutions by written consent acting upon Apache Holdings' resolutions to, among other things, remove each of the prior officers of Apache Railway.

23. Thereafter, also on May 18, 2015, Agent, through its counsel, provided Debtor with written notice that Agent (i) transferred ownership of the Stock to Apache Holdings and terminated Debtor's voting and distribution rights with respect to the Stock, (ii) removed each of the prior directors and officers of Apache Railway, and (iii) elected and appointed Mr. Gupta as Director, Chief Restructuring Officer, and President of Apache Railway.

**Debtor's Frivolous Bankruptcy Filing And Turnover Demand**

24. On May 20, 2015, two days after Agent lawfully transferred ownership of the Stock (Debtor's only material asset) to Apache Holdings on May 18, 2015 and notified Debtor thereof

1 and further notwithstanding Debtor's agreement not to impede Agent's enforcement efforts,
2 Debtor filed its bankruptcy petition and initiated this chapter 11 case.

25. According to its Schedules and Statement of Financial Affairs, Debtor is a holding company that generates absolutely no income and has no operations whatsoever. [DE #1] Debtor's Schedules list the Stock (inappropriately) and $50 in a bank account as Debtor's sole assets. [*Id.*] And Debtor's only creditors are the Lenders and two creditors holding unsecured claims. [*Id.*]

26. On the same day as the bankruptcy filing, counsel for Debtor[2] delivered a letter to Agent and Mr. Gupta that acknowledged that "[Apache Holdings] took ownership and possession of the [Stock]." [05/20/15 Letter from R. Charles attached as <u>Exhibit B</u>] Notwithstanding Debtor's acknowledgment that Apache Holdings, and not Debtor or Debtor's estate, has ownership of the Stock, the letter further appears to assert that Apache Holdings and Mr. Gupta are somehow "custodians" (as defined in section 101(11)(c) of the Bankruptcy Code) of unidentified estate assets and appears to make demand that Apache Holdings and Mr. Gupta turnover such unidentified estate assets. [*Id.*]

27. Debtor's filing of this no-asset chapter 11 case and its frivolous turnover demand is clearly intended to unduly harass Movants and delay and frustrate their lawful rights with respect to the Stock, which is not property of the estate. Due to Debtor's actions, Movants must now seek relief from the Court in order to stop Debtor's interference with Movants' lawful ownership of the Stock. Accordingly, Movants request that the Court dismiss this chapter 11 case or otherwise grant the relief requested herein for the reasons set forth below.

## IV. **LEGAL ARGUMENT.**

The Stock is not property of the estate. Agent lawfully and validly exercised its right to transfer the Stock to Apache Holdings and terminate all of Debtor's voting and distribution rights with respect to the Stock. Thereafter, and in a transparently desperate attempt to gain leverage

---

[2] The law firm that filed Debtor's bankruptcy petition purported to represent Apache pre-petition and has serious conflicts of interest that Movants believe would render that law firm unable to represent Debtor in this case. Movants reserve all rights with respect to this issue.

over Movants, Debtor filed this chapter 11 case, listed the Stock as property of the estate, and despite acknowledging that the Stock is not property of the estate now appears to demand that Movants and Mr. Gupta turnover the Stock to the estate.

Debtor undoubtedly filed this chapter 11 case as a means of delay and harassment. Accordingly, the case should be dismissed for cause. To the extent the Court believes dismissal is not in the best interest of creditors and the estate, Movants request a comfort order confirming that the automatic stay does not apply with respect to the Stock as it is not estate property. Finally, to the extent the Court believes there may be some bona fide dispute regarding whether Debtor has an interest in the Stock (which it does not), Movants request that the Court grant Movants relief from the automatic stay with respect to the Stock for cause as there simply is no hope for reorganization in this case as Debtor has no unencumbered assets, no income, and no operations, and further requests that the Court excuse Movants from turnover under these circumstances.

### A. This Case Should Be Dismissed For Cause.

Under section 1112(b) of the Bankruptcy Code, a bankruptcy court must dismiss a chapter 11 case on request of a party in interest upon a showing of "cause." 11 U.S.C. § 1112(b)(1). Courts overwhelmingly hold that a debtor's lack of good faith in filing its bankruptcy petition establishes cause for dismissal. *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994). "Once the movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor bears the burden of proving good faith by a preponderance of the evidence." *In re Erkins*, 253 B.R. 470, 474 (Bankr. D. Idaho 2000).

"The existence of good faith depends on an amalgam of factors and not upon a specific fact. . . . The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *Id.* Courts commonly dismiss cases under section 1112(b) that were filed "filed for a variety of tactical reasons unrelated to reorganization." *Id.* Courts in this judicial circuit also commonly weigh the following factors in determining whether a petition was filed improperly and should be dismissed under section 1112 for cause:

(1) whether the debtor has only one asset;

(2) whether the debtor has an ongoing business to reorganize;

(3) whether there are any unsecured creditors;

(4) whether the debtor has any cash flow or sources of income to sustain a plan of reorganization or to make adequate protection payments; and

(5) whether the case is essentially a two party dispute capable of prompt adjudication in state court.

*In re St. Paul Self Storage Ltd. P'ship*, 185 B.R. 580, 582-83 (B.A.P. 9th Cir. 1995). Scores of courts in this judicial circuit have dismissed cases where the debtor has few assets, no ongoing business operations, few creditors, and no ability to effectuate a reorganization. *See, e.g.*, *id.* (affirming dismissal of bad faith filing on finding that filing was a litigation tactic, primary asset was surrendered prepetition, sole remaining asset was litigation claim, and debtor had no operations); *In re Erkins*, 253 B.R. at 475-77 (similar); *In re Van Owen Car Wash, Inc.*, 82 B.R. 671, 672 (Bankr. C.D. Cal. 1988) (similar).

Pursuant to section 541(a), a debtor's estate is comprised of, among other things, all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Here, the sole material asset listed by Debtor on its Schedules is the Stock. But the stock is not property of the estate because it was lawfully transferred to Apache Holdings prior to the bankruptcy filing. Debtor's only true asset is $50 in a bank account. Debtor has no operations and there is no ongoing business to reorganize. Debtor has no income whatsoever to use to pay estate professionals, to make adequate protection payments to secured creditors, or to fund any plan in this case. And other than the Lenders, Debtor has only two unsecured creditors with modest claims whose only source of recovery is Debtor's $50.

The true purpose of this chapter 11 case is to frustrate and harass Movants with respect to the Stock and Apache Railway. This is not an appropriate use of the bankruptcy process, and is contrary to Debtor's prepetition agreement not to impede Agent's enforcement efforts. Accordingly, this case should be dismissed under section 1112(b).

### B. Absent Dismissal, Movants Are Entitled To A Comfort Order Confirming That The Automatic Stay Does Not Apply To The Stock.

Section 362(c) of the Bankruptcy Code provides that the automatic stay does not apply to property that is not property of the estate. 11 U.S.C. § 362(c). Under section 362(j), a bankruptcy court must, upon request by a party in interest, enter an order confirming that the automatic stay has been terminated with respect to property that is no longer property of the estate as provided in section 362(c). *Id.* § 362(j).

For all of the reasons set forth herein, and as acknowledged by Debtor's counsel [*see* Exhibit B], the Stock is not property of the estate. Therefore, the automatic stay does not apply with respect to the Stock and Movants are entitled to a comfort order confirming that the automatic stay does not apply with respect to the Stock. But for Debtor's frivolous bankruptcy filing and inappropriate scheduling of the Stock as an estate asset, Movants would have no need to seek this relief. However, that is not the case and, absent such relief, Movants are at risk of future assertions of stay violations with respect to the Stock. Accordingly, in the event it declines to dismiss this case, the Court should enter an order confirming that the automatic stay does not apply with respect to the Stock.

### C. If There Is A Bona Fide Dispute Regarding Whether The Estate Has An Interest In The Stock, Movants Are Entitled To Stay Relief And Should Be Excused From Turnover.

To the extent the Court determines that there is a bona fide dispute regarding whether the estate has an interest in the Stock (which there is not), then Movants should be granted stay relief and should be excused from turnover with respect to the Stock.

#### 1. Stay Relief for Cause is Appropriate.

Section 362(d)(1) of the Bankruptcy Code provides that a secured creditor is entitled to relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1).[3] "Cause" is not defined in the Bankruptcy Code, but is determined on a fact-intensive, case-by-case basis. *See In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990); *In re Beguelin*, 220 B.R. 94, 98 (B.A.P. 9th Cir. 1998). As with the analysis for dismissal, "[t]he debtor's lack of good faith in filing a

---

[3] Movants reserve the right to later move for relief under any other provision of section 362.

bankruptcy petition has often been used as cause for removing the automatic stay." *In re Arnold*, 806 F.2d 937, 939 (9th Cir. 1986). The existence of good faith again depends on an amalgam of factors, and the analysis has been described as follows:

> If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses . . . to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, on a feasible basis . . . good faith cannot be denied.

*Id.*

For all of the reasons set forth herein, there is simply no prospect that Debtor will be able to effect any reorganization whatsoever. Debtor filed this case solely to stop Movants from exercising control over the Stock and Apache Railway, which Debtor has accomplished by wrongfully scheduling the Stock as estate property. The stock has already been transferred to Apache Holdings. To the extent Debtor believes it has a remedy against Movants with respect to the transfer, that is a two-party dispute appropriately addressed in state court—not bankruptcy court. Accordingly, stay relief is appropriate.

### 2. **Excuse from Turnover is Appropriate.**

Section 543(b) of the Bankruptcy Code requires any "custodian" to deliver to the debtor property of the estate. 11 U.S.C. § 543(b)(1). Under the Bankruptcy Code, a custodian is a party in possession of property of the estate. *Id.* § 101(11). In particular, the provision cited by Debtor's counsel, section 101(11)(C), defines a custodian as:

> trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of ***property of the debtor*** for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors.

*Id.* § 101(11)(C) (emphasis added).

As an initial matter, and as discussed at length herein, neither Movants nor Mr. Gupta are "custodians" as the Stock is not property of the estate. Nor are Movants aware of any other property that might be in their possession or control, or Mr. Gupta's possession or control, that would constitute property of the estate, and Debtor's counsel has not articulated what that property

might be. Furthermore, with respect to Mr. Gupta, he cannot be a custodian even if the Stock is property of the estate. Mr. Gupta is a Director and officer of Apache Railway. To the extent he might be considered a custodian of anything, it would be a custodian of Apache Railway's assets. Yet Debtor never owned any of Apache Railway's assets—it only owned the Stock. Accordingly, neither Movants nor Mr. Gupta are custodians of any of the estate's assets and therefore are not subject to Debtor's purported demand for turnover.

Even if the Stock could be deemed subject to turnover, however, a bankruptcy court may excuse a custodian from compliance with the turnover requirements "if the interests of creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such property . . . ." 11 U.S.C. § 543(d); *see also In re KCC-Fund v. Ltd.*, 96 B.R. 237, 238 (Bankr. W.D. Mo. 1989). The Bankruptcy Code does not provide any specific test for determining when turnover should be excused. Nevertheless, courts have established several criteria for making this determination, including:

(1) the likelihood of successful reorganization;

(2) the probability that funds required for reorganization will be available;

(3) whether there are prior instances of mismanagement by debtor;

(4) whether debtor will use the turned-over property for the benefit of creditors; and

(5) whether there is any reason to believe that other creditors' interests will suffer by keeping debtor out of possession of the property.

*See In re Uno Broadcasting*, 167 B.R. at 200 (citing factors (1)-(3)); *In re Poplar Springs Apartments of Atl., Ltd.*, 103 B.R. 146, 150-51 (Bankr. S.D. Ohio 1989) (excusing compliance with turnover, specifically citing factors (1)-(3)); *In re CCN Realty Corp.*, 19 B.R. at 529 (excusing the state court receiver from complying with turnover, citing factors (3) and (4)); *In re Foundry of Barrington P'ship*, 129 B.R. 550, 558 (Bankr. N.D. Ill. 1991) (excusing the state court receiver from complying with turnover, citing factors (1), (3), and (5)).

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE: (602) 364-7000

As discussed herein at length, there is no possibility of reorganization in this case and Debtor has no operations or income to fund a plan. Furthermore, the property at issue is the Stock, and no other creditors (of which there are only two) will be prejudiced in any manner if Movants are not required to deliver the Stock to Debtor. Finally, while Movants make no claims regarding whether Debtor has any instances of prior mismanagement, requiring Movants to turn over the Stock to Debtor would substantially impair Movants' ability to exercise its control over the Stock once stay relief is granted as possession of the Stock is critical to Movants' rights with respect to the Stock. Accordingly, excuse from turnover with respect to the Stock, at least until the Court rules on all aspect of this motion, is appropriate.

## IV. CONCLUSION.

Based on the foregoing, Movants respectfully request that the Court enter an order:

A. Dismissing this chapter 11 case; or

B. In the alternative, confirming that the automatic stay does not apply with respect to the Stock; or

C. In the alternative, granting Movants relief from the automatic stay to permit Movants to exercise their rights and remedies with respect to the Stock and excusing Movants from turnover with respect to the Stock; and

D. Waiving the 14-day stay of the effectiveness of any order confirming that the automatic stay is inapplicable or granting relief from the automatic stay under Federal Rule of Bankruptcy Procedure 4001(a)(3); and

E. Granting Movants such other and further relief as the Court deems just and proper under the circumstances.

///
///
///
///
///
///

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, AZ 85004-4406
TELEPHONE: (602) 364-7000

1  RESPECTFULLY SUBMITTED this 26th day of May, 2015.

**BRYAN CAVE LLP**

By: /s/ BAS, #022721
    Bryce A. Suzuki
    Justin A. Sabin
    **BRYAN CAVE LLP**
    Two North Central Avenue, Suite 2200
    Phoenix, Arizona 85004
    Attorneys for Hackman Capital Equipment
    Acquisition Company, LLC and Apache
    Railroad Holdings, LLC

| | |
|---|---|
| 1 | COPY of the foregoing served via email<br>this 26th day of May, 2015, upon: |
| 2 | |
| 3 | Robert M. Charles, Esq.<br>Justin J. Henderson, Esq.<br>Lewis Roca Rothgerber LLP |
| 4 | One S. Church Avenue, Suite 700<br>Tucson, Arizona 85701 |
| 5 | rcharles@lrrlaw.com<br>jhenderson@lrrlaw.com |
| 6 | Proposed Attorneys for Debtor |
| 7 | Edward K. Bernatavicius, Esq.<br>Office of the United States Trustee |
| 8 | 230 North First Avenue, Suite 204<br>Phoenix, Arizona 85003 |
| 9 | edward.k.bernatavicius@usdoj.gov |
| 10 | |
| 11 | COPY of the foregoing served via US Mail<br>this 26th day of May, 2015, upon: |
| 12 | Snowflake Community Foundation<br>126 E. Commercial Street |
| 13 | Saint Johns, Arizona 85936 |
| 14 | Snowflake Community Foundation<br>PO Box 1348 |
| 15 | Saint Johns, Arizona 85936 |
| 16 | Steve Brophy<br>Aztec Land and Cattle Co., Ltd. |
| 17 | 10265 W. Camelback Road, No. 104<br>Phoenix, Arizona 85037 |
| 18 | |
| 19 | The Town of Snowflake<br>81 West 1st South<br>Snowflake, Arizona 85937 |
| 20 | |
| 21 |    /s/ Justin A. Sabin |

# EXHIBIT A

January 31, 2014

To: **Ryan Smith**
**Managing Director**
**Hackman Capital Partners, LLC**
11111 Santa Monica Blvd. Suite 1100
Los Angeles, CA 90025
By email to: rsmith@hackmancapital.com

From: Jay Brown
President
Snowflake Community Foundation ("Maker")
P.O. Box 1890
St. Johns, Arizona 85936
928/337-4225

Re: Extension of Notes Payable to the Hackman Group of Lenders ("Lenders") Pertaining to Purchase of the Stock of The Apache Railway Company

In consideration for Lenders extension of the Promissory Note dated January 30, 2013 by and between The Snowflake Community Foundation ("Maker") and the Partners who comprise the Lending Group ("Lenders"), the Maker agrees to the following:

- Maker shall use its best efforts to obtain Federal and State Funding in connection with the satisfaction of all monetary terms of the Promissory Note.

- Upon the earlier of the end of the note extension (June 1, 2013) or when it becomes that either a) the governmental funding is unlikely to occur, or b) such funding will be an amount insufficient to satisfy the entirety of the indebtedness, Maker can have the option to buy the Promissory Note from Lenders within 45 days.

- In the event that Maker cannot come up with Federal and State Funding or cannot secure funding to buy the Note from Lenders, by June 1, 2014, Maker agrees not to take any actions that might impede or delay Lenders' foreclosure efforts on the assets and will actively assist in any way it can using good faith with reasonable efforts to expedite the foreclosure process.

- Prior to February 15, 2014, Maker and Lenders will execute a Forbearance Agreement memorizing the above terms.

Snowflake Community Foundation, Inc.

_____
Its President

# EXHIBIT B



| LEWIS ROCA ROTHGERBER | Lewis Roca Rothgerber LLP<br>One South Church Avenue, Suite 700<br>Tucson, AZ 85701 | Robert M. Charles, Jr.<br>Admitted in Arizona and Nevada<br>(T) 702.949.8320 (F) 702.949.8321<br>RCharles@LRRLaw.com |

Our File Number: 300643-00001

May 20, 2015

OVERNIGHT DELIVERY

Michael Hackman
Hackman Capital Equipment Acquisition Company, LLC
Capital Recovery Group, LLC
Rabin Worldwide, Inc.
Revere Finance LLC
11111 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90025

Apache Railroad Holdings, LLC
11111 Santa Monica Boulevard, Suite 1100
Los Angeles, CA 90025

Sandeep Gupta
Novo Advisors
1235a N. Clybourn Ave Suite 152
Chicago Illinois 60610

Re: Snowflake Community Foundation

Dear Mr. Hackman, Mr. Gupta, et al:

I write on behalf of Snowflake Community Foundation, debtor in possession. The Foundation filed its voluntary chapter 11 petition in the United States Bankruptcy Court, District of Arizona, on May 20, 2015. As debtor in possession, the Foundation has the rights and powers of a trustee under 11 U.S.C. § 1107.

By a notice dated May 18, 2015, the Administrative Agent acting for the Lenders through Apache Railroad Holdings, LLC took ownership and possession of the stock of Apache Railway Company ("Railroad"). Apache Railroad Holdings, LLC appointed Mr. Sandeep Gupta as sole Director of the Company. Mr. Gupta was further appointed president of the Railroad. In doing so, it appears that Apache Railroad Holdings, LLC and its agent Mr. Gupta are a Custodian as that term is defined in 11 U.S.C. § 101(11)(C). As such, pursuant to 11 U.S.C. § 543(b) each Custodian shall:

> (1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and

# LEWIS ROCA ROTHGERBER

Michael Hackman
May 20, 2015
Page 2

(2) file an accounting of any property of the debtor, or proceeds, product, offspring, rents, or profits of such property, that, at any time, came into the possession, custody, or control of such custodian.

Please confirm your intention to comply with the law.

Sincerely,

Robert M. Charles, Jr.
LEWIS ROCA ROTHGERBER LLP

RMC:rlc

Copy: Eric S. Prezant, Esq.

5890373_1